# APRIL 5, 1944

BENNIE JOHNSON V. THE STATE.

No. 22824. Delivered April 5, 1944.

The opinion states the case.

*A. W. Marshall,* of Anahuac, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is death.

Appellant's chief contention is that the evidence is insufficient to sustain his conviction. The record discloses that on the 8th day of July, 1943, the bodies of Ralph Maley and his sister, Mrs. Leona Franssen, were discovered at their home in an advanced state of decomposition. An autopsy was subsequently performed on the bodies which disclosed that they had been shot with No. 4 shot. Appellant, who was seen in the immediate vicinity on Monday, July 5th, was subsequently arrested and at the time of his arrest, he had a flashlight in his suitcase which was identified by a sister of Mr. Maley as being similar to the one which her brother owned and which was missing from his home.

Appellant made a confession to the District Attorney in which he stated that he went to the home of the deceased persons with an iron pipe about three or four feet long; that upon reaching their home he found the screen door latched; that he cut the screen, reached in with his fingers, unlatched the door and entered the house; that he passed down the hallway and noticed Mr. Maley asleep in his bed; that he struck him with the iron pipe and then picked up a double-barreled shotgun which was sitting in the corner of the room, and when Mr. Maley raised up he shot him; that he noticed a purse and some keys lying on the dresser which he put in his pockets, and when he started to leave he saw Mrs. Franssen with a flashlight in her hand coming into the hallway and he shot her; that he then reloaded the gun, set it in its place, went to the garage, took the Chevrolet automobile and drove it to Houston, where he parked it at or near the Southern Pacific Depot and then went home. After being arrested he told the officers where he had parked the automobile. As a result of the information received from appellant, the officers found the automobile at the place designated by him. Some blood spots were discovered on his clothes. The officers cut pieces out of his clothes containing the spots and sent them, together with blood taken from the floor where Mrs. Franssen lay, to the Department of Public Safety at Austin for a chemical analysis. The chemist found that the blood spots on appellant's clothes were human blood of the type "O" and that taken from the floor was of the same type. The screen in the front door was cut as stated by appellant in his confession.

Appellant took the witness stand and testified that he was present at the time of the killing but took no part therein; that on the afternoon of July 5, 1943, he met two white men on Cotton Bayou. They asked him where he was going; that he replied: "To Mr. Schaefer's place;" that after conversing with them a while one of the men showed him a, clock-like instrument by which he claimed he could locate money. The other man had a pistol and remarked that it would kill a "nigger" mighty quick, and that is what would happen to him (appellant) if he did not go with them; that about sundown the three walked down a fence line, saw an iron pipe sticking in the ground, and one of them asked him to pull it up, which he did; that he carried it with him to the canal bridge and from there to Mr. Maley's cornfield, where they sat down to rest a while; that after they had rested the smaller of the two men went to the home of Mr. Maley; that in a short while he heard a shot and in a few minutes a second shot; that he and the other white man then went to the house to see what had happened. The small man pulled the screen door open, flashed a light into the house and they saw Mrs. Franssen lying on the floor and blood running over it. They then got Mr. Maley's automobile and started to Houston. When they reached Houston, they drove up to the Southern Pacific Depot, parked the car and all got out; that they told him they were going to Dallas; that they gave him $34.00 and some change and said: "That is enough for you." He then took a bus for home; that he did not know who these men were; that he had never seen them before nor since.

We deem the evidence sufficient to sustain the jury's conclusion of the appellant's guilt.

His next complaint relates to the court's action in admitting in evidence his written confession. The record discloses that at the beginning of the trial appellant filed a motion in which he requested the court to exclude the confession on the ground that it was made under duress and after he had been promised leniency by the officers who had him under arrest. The court heard evidence relating to the averments in the motion, and at the conclusion thereof admitted the confession in evidence. However, the cautious trial judge submitted the issue as to whether the confession was voluntarily made to the jury and instructed them that if they believed from the evidence that the confession introduced was not freely and voluntarily made, or if upon that question they had a reasonable doubt, they could not consider the same as evidence. Appellant, who testified in his own behalf, admitted that his testimony coincided with his confession

in every respect except that he did not do the killing; that he made no mention in his confession of the two white men and their connection with the murder. He made no claim of being mistreated by the officers or that he was forced to make the confession. Under the circumstances disclosed by the record, no error is shown to have been committed.

It is therefore ordered that the judgment of the trial court be, and the same is, in all things affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.